UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE PROPERTY CASUALTY
INSURANCE COMPANY,

     Plaintiff,                             Case No. 12-15315

v.                                   Hon. Patrick J. Duggan

DANA HATCH, MYA SHABAZZ, and
MARVIN BROWN, as Personal
Representative of the Estate of MIRANDA
HENRY,

     Defendants.

_____/

## OPINION AND ORDER

This case presents a controversy concerning the scope of coverage afforded by a homeowner's insurance policy Plaintiff Allstate issued to Defendant Mya Shabazz. Allstate instituted this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration from this Court that it has no duty to defend or indemnify Defendants for any claim or legal action filed on behalf of a foster child who was in the custody of Defendant Dana Hatch at the time of her death. One such legal action, initiated by the foster child's personal representative against Defendant Hatch, is pending before this Court.

Two motions are presently before the Court: (1) Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and (2) Allstate's Motion for Summary Judgment. The matters have been fully briefed and the Court held a motion hearing on May 30, 2013. For the reasons stated herein, the Court (1) denies Defendants' Motion to Dismiss,

(2) grants summary judgment in favor of Allstate and, in so doing, (3) declares that

Allstate has no duty to defend or indemnify Defendant Hatch.

## I.    FACTUAL AND PROCEDURAL BACKGROUND PERTINENT TO BOTH MOTIONS

This matter comes before the Court on Plaintiff Allstate's Complaint for

Declaratory Judgment, the subject matter of which arises, at least in part, out of the same

transaction or occurrence that is the subject matter of litigation pending before this Court.

The Court begins by briefly describing the underlying litigation.

On September 20, 2012, Marvin Brown, as Personal Representative of the Estate

of Miranda Henry, filed a civil suit in this Court against Starr Commonwealth and

Defendant Hatch in connection with the October 8, 2011 accidental death of five-week-

old Miranda Henry.[1]   Henry, a foster child, was placed in the custody of Hatch, a foster

parent licensed pursuant to Michigan law.  Henry died while in Hatch's care in a home

owned by Hatch's daughter Mya Shabazz.[2]  Allstate issued a homeowner's insurance

policy to Shabazz[3] for the aforementioned property in which it agreed to provide a

defense and/or indemnification if Shabazz or any other insured became legally obligated

to pay damages because of bodily injury arising from an occurrence to which the policy

applies, subject to the terms, conditions, limitations, and exclusions set forth therein.

(Policy, Compl. Ex. A.)

---

[1] Case No. 12-14190.

[2] Shabazz is not named as a defendant in the underlying litigation.

[3] Policy No. 906585971. (Compl. ¶ 8.)

2

In connection with the underlying lawsuit brought on behalf of Henry, Hatch requested a defense from Allstate, which implicitly served as a request that Allstate agree to indemnify her against any monetary award that may be entered against her.  (Compl. ¶ 3; Pl.'s Resp. 1.)  Allstate agreed to defend Hatch subject to a reservation of rights.  (Reservation of Rights, Pl.'s Resp. Ex. D.)

Since agreeing to provide this defense, "Allstate has questioned whether it has a duty to defend or indemnify Defendant Hatch . . ., as she was not an insured under Mya Shabazz' homeowners policy, thereby precluding coverage, and even if she was, then decedent Henry would then also be an insured, also precluding coverage." [4] (Compl. ¶ 19.)  In order to clarify its obligations, Allstate filed this declaratory judgment action on December 4, 2012.[5]  (ECF No. 1.)

Two motions are presently before the Court in connection with Allstate's Complaint for Declaratory Judgment.  The Court first addresses Defendants' Motion to Dismiss for Lack of Federal Subject Matter jurisdiction filed pursuant to Federal Rule of Civil Procedure 12(b)(1).  (ECF No. 9.)  Because the Court has jurisdiction over

---

[4] The Court points out that this allegation describes Counts I and II of Allstate's Complaint for Declaratory Judgment as pertinent to Hatch.  Count I is entitled "Dana Hatch is Not an Insured under Mya Shabazz' Homeowners Policy" and Count II is entitled "No Duty to Defend or Indemnify Dana Hatch or Mya Shabazz because, if Dana Hatch is an Insured, then Decedent Henry is also an Insured, Precluding Coverage." (Compl. 5, 6.)

[5] Counts II (*see supra* n.4) and III (entitled "No Duty to Defend or Indemnify Mya Shabazz because Ms. Shabazz Violated the Subject Insuring Agreement") of Allstate's Complaint seek declaratory relief as to Defendant Shabazz.  (Compl. 6, 7.)  At the May 30, 2013 motion hearing, however, Allstate's counsel indicated that Allstate was no longer seeking any such relief. Accordingly, this Opinion and Order only addresses the declaratory judgment action with respect to Defendant Hatch.

Allstate's declaratory judgment action, the Court then addresses Allstate's Motion for

Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 12.)

## II.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**A.    Standard of Review**

Motions to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule

of Civil Procedure 12(b)(1) fall into two categories: facial attacks and factual attacks.

*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  The Sixth Circuit has

described these two categories of motions:

> A *facial* attack is a challenge to the sufficiency of the pleading itself.  On such motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party . . . . A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction.  On such a motion, no presumptive truthfulness applies to the factual allegations . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*Id*. (internal citations omitted) (emphasis in original).  A plaintiff bears the burden of

demonstrating that a court has jurisdiction over the subject matter.  *RMI Titanium Co. v.*

*Westinghouse Elec. Corp.*, 78 F3.d 1125, 1134 (6th Cir. 1986) (citation omitted).

**B.    Analysis**

Defendants' Rule 12(b)(1) Motion argues that Plaintiff's declaratory judgment

action fails to satisfy the case or controversy requirement contained in Article III of the

United States Constitution and that as a result, this Court lacks subject matter jurisdiction.

In the alternative, Defendants argue that even if subject matter jurisdiction exists, the

4

Court should exercise its plenary discretion and decline to exercise jurisdiction over this matter. These arguments, both of which the Court rejects, are addressed in turn.

**1.      *Is Plaintiff's Declaratory Judgment Action Justiciable?***

Federal courts are courts of limited jurisdiction and may only exercise those powers authorized by the United States Constitution and federal statutes enacted by Congress. Accordingly, the first and most fundamental question presented in every civil action brought in federal court is whether subject matter jurisdiction exists. *Metro Hydroelectric Co. v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008); *Valinski v. Detroit Edison*, 197 F. App'x 403, 405 (indicating that federal courts have an independent obligation to strictly police the boundaries of its subject matter jurisdiction).

Although the Declaratory Judgment Act is a federal statute, it is axiomatic that the Act does not create an independent basis for federal subject matter jurisdiction, rather, "[t]he Act merely provides courts with discretion to fashion a remedy. Thus, before invoking the Act, the court must have jurisdiction already." *Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003) (citations omitted). A party seeking declaratory relief pursuant to 28 U.S.C. § 2201, therefore, "must establish either diversity or federal question jurisdiction." *Woodmen of the World/Omaha Woodmen Life Ins. Soc'y v. Scarbro*, 129 F. App'x 194, 195 (6th Cir. 2005) (per curiam). In this case, Allstate relies on 28 U.S.C. § 1332, the statute granting federal courts jurisdiction over cases or controversies between diverse parties, as the underlying basis for jurisdiction. This statute provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive

5

of interest and costs, and is between—(1) citizens of different States[.]"  28 U.S.C. §

1332(a)(1).[6]

Defendants, relying on the dichotomy between the duty to defend and the duty to

indemnify, set forth a dual-pronged argument suggesting that this Court lacks

jurisdiction.  First, Defendants make a bifurcated Article III argument with respect to the

duty to indemnify, contending that the issue is not ripe for review and that Allstate lacks

standing to raise the issue at this juncture.  (Defs.' Br. 9.)  Second, Defendants argue that

because the duty to indemnify is not ripe, no subject matter jurisdiction exists under 28

U.S.C. § 1332 because the duty to defend will not cost $75,000 and the dispute, therefore,

does not satisfy the amount in controversy requirement.[7]  (*Id.* at 9-10.)  The Court rejects

both arguments.

Defendants contend that the question of whether Allstate has a duty to indemnify

should not be adjudicated until liability is established in the underlying action.  (Defs.'

Br. 8.)  As authority for the proposition that Allstate lacks standing and that the

---

[6] Article III of the Constitution authorizes federal jurisdiction in all controversies where the parties are "citizens of different states."  U.S. Const. art. III, § 2.  But Congress has always limited this grant of jurisdiction by also requiring that cases satisfy a minimum amount-in-controversy requirement.  *See Snyder v. Harris*, 394 U.S. 332, 334, 89 S. Ct. 1053, 1056 (1969). When Congress first established the lower federal courts in the Judiciary Act of 1789, the required amount in controversy was $500.  *Id.*  Over the years, that figure has increased, and today "the matter in controversy [must] exceed[] the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332.

[7] There appears to be no dispute that the parties are diverse for purposes of 28 U.S.C. § 1332(a)(1).  Allstate is both incorporated in and has its principal place of business in the State of Illinois.  (Compl. ¶ 1.)  Hatch is a citizen of the State of Michigan, as is Brown.  (*Id.* at ¶¶ 2, 4.)  Although the parties dispute the citizenship of Shabazz, no party contends that she is a citizen of the state of Illinois.  Therefore, the requirement of diversity of citizenship is satisfied.

indemnification issue is not ripe, Defendants cite Michigan law providing that "[a]n insurer is not obligated to indemnify or pay damages to another until one's liability for the injury has been established." *S. Macomb Disposal Auth. v. Am. Ins. Co.*, 225 Mich. App. 635, 692, 572 N.W.2d 686, 711 (1997) (citation and internal quotation marks omitted). According to Defendants' theory, this Court may not entertain the present declaratory judgment action with respect to the indemnity issue unless and until an insured is found liable in the underlying action. (Defs.' Br. 8.)

Despite Defendants' contentions to the contrary, the Sixth Circuit has found subject matter jurisdiction to exist in declaratory judgment actions brought by a liability insurer concerning its duty to indemnify while litigation of the underlying liability issues was still unresolved. *See, e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 562-53 (6th Cir. 2008); *see generally* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2757, at 467 (3d ed. 1998) (describing the liability insurer's suit for a declaration of no duty to indemnify as a "clear" example where "a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real"). In light of this precedent, the Court rejects Defendants' standing and ripeness arguments and finds that the Court has jurisdiction pursuant to Article III of the Constitution.

Since the Court has found that the indemnification issue is ripe and that Allstate has standing to seek a declaration regarding its duty to indemnify, the Court need not delve too deeply into Defendants' argument that the Court lacks jurisdiction because the amount in controversy requirement contained in 28 U.S.C. § 1332 has not been satisfied.

7

As the Sixth Circuit has explained, "[o]ne principle is well-settled: for actions seeking a declaratory judgment, we measure the amount in controversy by 'the value of the object of the litigation.'" *Northup Props., Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 770 (6th Cir. 2009) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434, 2443 (1997)). The Sixth Circuit has interpreted that to mean that "[w]here a party seeks a declaratory judgment, the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (quotation omitted).

In the instant dispute, if Allstate prevails, it will receive a declaration that it neither has a duty to defend nor indemnify Defendants. If Allstate does not prevail, it faces liability of up to $100,000, as provided in the homeowner's insurance policy. (Policy, Compl. Ex. A.) The "value of the consequences which may result from the litigation – that is, the monetary consequences that would result from a" declaration by this Court – is the difference between no coverage and $100,000 in coverage. *Freeland*, 632 F.3d at 253. That amount exceeds $75,000, exclusive of interest and costs. As explained in *Freeland*, "this conclusion flows from the text of the jurisdictional statute itself. In order for the district court to have original jurisdiction, "the matter in controversy" must "exceed[] the sum or value of $75,000." *Id.* (quoting 28 U.S.C. § 1332). The matter in controversy – whether the insurance policy covers Hatch – thus satisfies the amount in controversy requirement.

For the reasons above, the Court concludes that it has subject matter jurisdiction.

## 2.   *Should the Court Decline to Exercise Jurisdiction?*

In addition to satisfying the jurisdictional prerequisites for federal subject matter jurisdiction, Allstate's declaratory judgment claim is also appropriate for the exercise of the Court's discretionary jurisdiction. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). This language affords district courts "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007) (quotation omitted). To guide district courts in the determination of whether to exercise jurisdiction over a declaratory judgment action, the United States Court of Appeals for the Sixth Circuit has adopted the following five factor test:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

In applying these five factors to this case, the Court finds that the factors militate in favor of the Court exercising its jurisdiction. As for the first two factors, although the

declaratory judgment action will not settle the controversy in the underlying litigation, it will settle the insurance coverage controversy between Allstate and Defendants. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008). In resolving this controversy, the Court need only look to the language of the insurance policy and need not make factual determinations disputed in the underlying action. Moreover, the declaratory judgment action will resolve whether or not Allstate has a duty to defend Hatch in the underlying action, and "a prompt declaration of policy coverage would surely 'serve a useful purpose in clarifying the legal relations at issue.'" *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000). With respect to the third factor, which examines whether the declaratory remedy is being used for purposes of "procedural fencing" or "to provide an arena for a race to res judiciata," the Court finds no evidence that Allstate filed this action for an improper purpose and no indication that any of the same factual questions are at issue in the two actions. The fourth factor is applicable here. Because the other action is also before this Court, the declaratory judgment will not increase friction with or encroach on the jurisdiction of the state courts.[8] Lastly, Defendants suggest that the fifth factor – which asks whether an alternative and more effective remedy exists – weighs against jurisdiction because Allstate could seek

---

[8] Defendants dedicate a significant portion of their Brief to explaining why the questions this Court is asked to resolve in the declaratory judgment action are more appropriately answered by the state courts. (Defs.' Br. 15-19.) This line of argumentation is a red herring. The underlying action was not filed in state court and despite Defendants' suggestion that the underlying lawsuit is not properly before this Court, no motion arguing such has been filed in the underlying litigation. The Court will not permit Defendants to seek a backdoor advisory opinion on this Court's subject matter jurisdiction in that matter.

declaratory relief in the Michigan courts. (Defs.' Br. 19-20). While Defendants are correct that an alternative remedy exists, there is no indication that the remedy is better or more effective. In sum, each of the five factors favors exercising jurisdiction over Allstate's declaratory judgment action.

Having failed to persuade the Court on the merits of either argument set forth in their Motion to Dismiss for Lack of Subject Matter Jurisdiction, (ECF No. 9), the Court denies Defendants' Motion.

### III.    MOTION FOR SUMMARY JUDGMENT

Allstate seeks a declaration that it has no duty to defend or indemnify Hatch because she is not an insured covered by the policy. (Compl. 5.) Summary judgment is proper, according to Allstate, because the undisputed material facts establish that Hatch is not an insured within the meaning of the policy. Defendants, on the other hand, contend that Hatch is covered by Shabazz' policy and that summary judgment is premature because of lingering factual disputes. In sum, the parties dispute the interpretation and proper application of the insurance policy language.

### A.    Standard of Review

Federal Rule of Civil Procedure 56 instructs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court assessing the appropriateness of summary judgment asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*,

323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986)).

The initial burden of proving the absence of a genuine dispute rests with the movant, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986), who "must support the assertion by: (A) citing to particular parts of materials in the record…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[,]" Fed. R. Civ. P. 56(c)(1)(A)-(B).   While this inquiry requires the Court to construe factual disputes, and the inferences there from, in the light most favorable to the non-moving party, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment.  *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

If the moving party discharges the initial burden using the materials specified in Rule 56(c), the burden of defeating summary judgment shifts to the non-movant who must point to specific material facts – beyond the pleadings or mere allegation – which give rise to a genuine issue of law for trial.  *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514.  A mere scintilla of evidence supporting the non-movant's claim will not prevent summary judgment; rather, there must be evidence on which a jury could reasonably find for the non-movant.  *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

**B.    Analysis**

Because this Court's jurisdiction is premised upon the diversity of citizenship of the parties, in resolving this dispute – which raises questions of state law – the Court

must apply the law of the state's highest court. *Mich. First Credit Union v. CUMIS Ins. Soc'y, Inc.*, 641 F.3d 240, 251-52 (6th Cir. 2011) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938)). "Pursuant to [Michigan] law, an insurance company has a contractual obligation to defend and indemnify its insured 'with respect to insurance afforded by the policy. If the policy does not apply, there is no duty to defend.'" *Nat'l Union Fire Ins. Co. v. Alticor, Inc.*, Nos. 05-2479, 06-2538, 2007 U.S. App. LEXIS 22585, at *13-14 (6th Cir. Sept. 19, 2007) (unpublished) (quoting *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 452 Mich. 440, 450, 550 N.W.2d 475, 481 (1996)); *see also S. Macomb Disposal Auth.*, 225 Mich. App. at 691, 572 N.W.2d at 711 ("[A]ny analysis of an insurer's duty to defend must begin with an examination [of] whether coverage is possible. . . . If coverage is not possible, then the insurer is not obliged to offer a defense.") (quotation omitted). Because the duty to defend is broader than the duty to indemnify, *Auto-Owners Ins. Co. v. City of Clare*, 446 Mich. 1, 15, 521 N.W.2d 480, 487 (1994), if no duty to defend arises pursuant to the policy's terms, the more limited duty of indemnification cannot be imposed by that policy, *Alticor*, Nos. 05-2479, 06-2538, 2007 U.S. App. LEXIS 22585, at *17-18.

In Michigan, insurance coverage is a matter of contract between the parties to the insurance policy. *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566, 489 N.W.2d 431, 433 (1992). Thus, in determining coverage issues, courts utilize the familiar principles of contract interpretation to discern the intent of the parties. *Farmers Ins. Exch. v. Kurzmann*, 257 Mich. App. 412, 417, 668 N.W.2d 1999, 203 (2003). The parties' intent is presumed to reside within the contractual language. *Klapp v. United Ins.*

13

*Group Agency, Inc.*, 468 Mich. 459, 476, 663 N.W.2d 447, 458 (2003).   The insurance

contract is read as a whole and meaning is given to all of its terms.  *Wilkie v. Auto-*

*Owners Ins. Co.*, 469 Mich. 41, 51 n.11, 664 N.W.2d 776, 781 n.11 (2003).  When terms

are defined in a policy and those definitions are not ambiguous, the policy's definitions

are controlling.  *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 354, 596

N.W.2d 190, 193 (1999) (citation omitted).   However, "[t]he fact that a policy does not

define a relevant term does not render the policy ambiguous."  *Id.* at 354, 596 N.W.2d at

194 (citation omitted).  Rather, reviewing courts must interpret undefined terms in

accordance with their common and plain meaning.  *Twichel v. MIC Gen. Ins. Corp.*, 469

Mich. 524, 534, 676 N.W.2d 616, 622 (2004).  In giving meaning to undefined terms,

courts may look to dictionary definitions, *id.*, but courts "do not ascribe ambiguity to

words simply because dictionary publishers are obliged to define words differently to

avoid possible plagiarism[,]" *Henderson*, 460 Mich. at 354, 596 N.W.2d at 194 (citation

omitted).  In sum, an insurance contract must be enforced in accordance with its terms.

*Id.* at 354, 596 N.W.2d at 193.

In analyzing the instant motion, the Court "begin[s] with an examination [of]

whether coverage is possible."  *S. Macomb Disposal Auth.*, 225 Mich. App. at 691, 572

N.W.2d at 711.  Resolution of this threshold issue will determine the rights and

obligations of the party and will therefore inform the Court as to whether summary

judgment is appropriate.

### 1.   *Insurance Policy Terms*

The policy issued to Shabazz provides:

14

> Subject to the terms, conditions, and limitations of this policy, we will pay damages which an *insured person* becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

(Pl.'s Br. in Supp. 2 (citing Policy, Ex. A) (emphasis added).)

To be covered by the policy, Hatch must fall within the definition of an insured person. The policy defines the term "insured person(s)" as "you and, if a resident of your household: (a) any relative; and (b) any person under the age of 21 in your care." (Pl.'s Br. in Supp. 4-5 (citing Policy, Ex. A at 3).) "You" and "your" mean the person listed as the named insured on the policy declarations page and that person's resident spouse. (Defs.' Resp. 15 (citing Policy, Ex. D at 4).) Shabazz is the sole insured listed on the declarations page. (Defs.' Resp. 15 (citing Allstate Policy Declarations, Ex. G).) Because the parties do not dispute that Hatch and Shabazz are related, (Pl.'s Br. in Supp. 5), to qualify as an insured person within the meaning of the policy, Hatch must have been a "resident" of Shabazz' "household" at the time of the underlying incident. The Court must therefore determine whether the Wick Road Property was Shabazz' household at the time of the events giving rise to the underlying litigation.

## 2.    *Meaning of "Resident of Your Household"*

Although the terms "resident" and "household" are not defined in the policy at issue, this does not, standing alone, render the policy language ambiguous.[9] *Henderson*,

---

[9] Defendant Brown, Henry's personal representative, filed a Response to Allstate's Motion for Summary Judgment arguing that Allstate's failure to define "household" was "a deliberate creation of ambiguity[.]" (Brown Resp. 2, ECF No. 20.) Because Michigan courts have provided a framework for interpreting "household" and "resident of your household," the Court rejects this argument and finds that the language is unambiguous.

460 Mich. at 354, 596 N.W.2d at 194 (citation omitted).  Rather, under Michigan law, the Court must construe the phrase in accordance with the "plain and ordinary meaning that would be apparent to the reader of the instrument." *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 464, 703 N.W.2d 23, 28 (2005) (citation omitted).

In *Thomas v. Vigilant Ins. Co.*, 156 Mich. App. 280, 401 N.W.2d 351 (1986) (per curiam), the court considered whether the plaintiff was entitled to coverage under a homeowner's policy issued to his parents.  As in this case, the policy extended coverage to the named insureds and to "residents of the named insured's household." *Id.*  Relying on various dictionary definitions, the court held that the "commonly understood meaning of the word 'household' is a family unit living together under the same roof." *Id.* at 283, 401 N.W.2d at 352.  As explored more fully below, whether a person seeking coverage as a member of a named insured's household will not necessarily depend on whether that person resides under the same roof as the insured.  *Montgomery v. Hawkeye Sec. Ins. Co.*, 52 Mich. App. 457, 461, 217 N.W.2d 449, 451 (1974) (per curiam) (rejecting a mechanical approach that looks solely to whether the persons at issue dwell in or occupy the same physical premises when determining whether the persons are residents of the same household); *Workman v. Detroit Auto. Inter-Ins. Exch.*, 404 Mich. 477, 497 n.6, 274 N.W.2d 373, 380 n.6 (1979) (holding that the fact that the person at issue lives under the same roof is a matter of weight in support of the conclusion that he is a member of the same household, but is not dispositive).  This is because while "household" may have a commonly understood meaning, the Michigan Supreme Court acknowledged decades ago that the phrase "resident of an insured's household" does not have an absolute meaning in

16

ordinary communication; rather, it "may vary according to the circumstances."

*Workman*, 404 Mich. at 495-96, 274 N.W.2d at 379 (citations and internal quotation

marks omitted).  Although the analysis is context-specific, the Michigan Supreme Court

has created a framework to guide courts in the determination of whether a person seeking

the benefit of insurance coverage is a resident of a household.[10]  *Id.*  Pursuant to this

framework, courts balance the following factors, none of which is dispositive:

> (1) the subjective or declared intent of the person remaining, either
> permanently or for an indefinite or limited length of time, in the place he
> contends is his "domicile" or "household"; (2) the formality or informality
> of the relationship between the person and the members of the household;
> (3) whether the place where the person lives is in the same house, within
> the same curtilage[,] or upon the same premises; [and] (4) the existence of
> another place of lodging by the person alleging "residence" or "domicile"
> in the household.

*Id.* at 496-97, 274 N.W.2d at 379-80.  In making the residency determination, courts may

also consider the following five factors: (1) the person's mailing address; (2) whether the

person maintains possessions at the insured property; (3) the address on the person's

driver's license and other documents; (4) whether a bedroom is maintained for the person

at the insured property; and (5) whether the person is dependent upon the insured for

financial assistance.  *Dairyland Ins. Co. v. Auto-Owners Ins. Co.*, 123 Mich. App. 675,

682, 333 N.W.2d 322, 325 (1983).

---

[10] In *Workman*, the Michigan Supreme Court explained that although it was
construing a no-fault automobile policy that involved whether a person was "domiciled in
the same household[,]" it was relying on long-standing precedents construing the phrase
"resident of an insured's household."  *Workman*, 404 Mich. at 495, 274 N.W.2d at 379.
The Court deemed the language analytically similar given that save special
circumstances, the terms "domicile" and "residence" are legally synonymous in the State
of Michigan.  *Id.*

Before proceeding, the Court notes that the analytical focus in this case differs from the majority of cases.  (Defs.' Resp. 9 n.3.)  In the typical scenario, there is no dispute over the named insured's residence or household; rather, the focus is on ascertaining whether a relative is a resident of the named insured's household so the relative may benefit from the insured's insurance policy.  *See, e.g.*, *Workman*, 404 Mich. 477, 274 N.W.2d 373 (1979); *Dairyland Ins. Co.*, 123 Mich. App. 675, 333 N.W.2d 322. Here, however, a unique factual scenario is presented: Ms. Hatch's (the relative's) domicile is undisputed and the Court must focus on Ms. Shabazz' (the named insured's) household or domicile.  *Detroit Med. Ctr. v. Farm Bureau Gen. Ins. Co.*, Nos. 287775, 287776, 2010 Mich. App. LEXIS 583, at *15 (Apr. 1, 2010) (per curiam) (unpublished).[11]  This distinction does not alter the Court's analysis because the policy language at issue requires that the relative and the named insured be members of the same household.

### 3.    *Undisputed Material Facts Regarding Ms. Shabazz' Household*

Shabazz attended Howard University in Washington, D.C. from 2000 until graduating in 2005 with a baccalaureate degree in nutritional science with a concentration in pre-dentistry.  (Shabazz Aff., Defs.' Resp. Ex. C., at ¶¶ 3, 5.)  From 2004 to 2007, which includes a portion of time Shabazz attended Howard University, Shabazz' "residence was with [her] mother, Dana Hatch, in the City of Detroit[.]"  (*Id.* at ¶ 4.)

---

[11] Defendants rely heavily upon this case in their Response.  Not only does the Court find this case distinguishable on its facts, but the case is unpublished and therefore not precedentially binding.

18

Sometime in June or July 2007, Shabazz purchased the residence commonly known as 20777 Wick Road in Taylor, Michigan ("Wick Road Property").  (*Id.* at ¶ 6.)

In August 2007, just a month or two after purchasing the Wick Road Property, Shabazz "left Michigan to study dentistry at the Medical College of Georgia in Augusta, Georgia."  (*Id.* at ¶ 7.)  Although the affidavit does not indicate precisely when, Shabazz "became a Georgia resident because the Medical College of Georgia required a 1-year Georgia residency prior to admission."  (*Id.* at ¶ 8.)  Upon relocating to Georgia, Shabazz stayed with cousins in Duluth, Georgia for a "few weeks[,]" then stayed with college friends "for a couple of months[.]"  (*Id.* at ¶¶ 9(B)-(C).)  In October 2007, Shabazz leased an apartment for an unspecified duration of time and upon the termination of that lease, she returned to Duluth to stay with her cousins for an unspecified amount of time, after which she "leased an apartment where" she still resides.  (*Id.* at ¶¶ 9(D)-(F).)

Although Shabazz became a Georgia resident in 2007, she did not transfer her driver's license from Michigan to Georgia for approximately two years and did so only because a Georgia license was a requirement of employment with the Georgia Perimeter College Police Department.  (*Id.* at ¶ 9(O).)  Moreover, for one-and-a-half years after relocating, Shabazz maintained her Michigan vehicle registration and did not register her vehicle in Georgia until July 2011.  (*Id.* at ¶ 9(P).)

Shabazz repeatedly returns to the Wick Road Property when the opportunity arises.  (*Id.* at ¶ 9(Q).)  The Wick Road Property remains titled in Shabazz' name, Shabazz is the named insured in the Allstate homeowner's policy issued for the Wick Road Property, and property tax bills for the property are in her name.  (*Id.* at ¶¶ 9(G)-

19

(I).)  Both the gas and electric utility bills are in Shabazz' name and Shabazz continues to receive some mail at the Wick Road Property.  (*Id.* at ¶¶ 9(J)-(L).)  In addition to possessing a key to the house on Wick Road, Shabazz keeps and maintains clothes, books, and other personal property there.  (*Id.* at ¶¶ 9(M)-(N).)  Hatch, Shabazz' mother, resides at the Wick Road Property.  (Pl.'s Reply 2.)

**4.    *Application***

Defendants contend that summary judgment is inappropriate because genuine issues of material fact exist with respect to whether Hatch was a resident of Shabazz' household at the time of the underlying incident.  (Defs.' Resp. 13.)  Although "membership in a household is generally a question of fact[,]"  *Farm Bureau Gen. Ins. Co. v. Palmateer*, No. 253290, 2005 Mich. App. LEXIS 1373, at *7 (May 31, 2005) (unpublished) (citations omitted), Defendants do not suggest that the underlying facts are in dispute.  Rather, Defendants argue that because some of the *Workman* "factors support a finding that Ms. Shabazz was a member of the household where Ms. Hatch was domiciled at the time of the accident[,]" the Court should not grant summary judgment. This argument is unavailing because Michigan law provides that "[w]here the underlying facts are not in dispute," as is the case here, "whether the individual at issue was a resident of the insured's household is a matter of law for the courts[,]" *Secura Ins. Co. v. Matthews*, No. 308425, 2013 Mich. App. LEXIS 482, at *6 (Mar. 19, 2013) (unpublished) (citing *Fowler v. Airborne Freight Corp.*, 254 Mich. App. 362, 364, 656 N.W.2d 856, 857 (2002) (per curiam)).  While the Court recognizes that the application

20

of insurance provisions to a given set of facts and circumstances is not always easy, that alone does not make summary judgment inappropriate as a matter of law.

As mentioned above, Michigan law does not require that persons at issue dwell in the same physical premises when determining whether the persons are residents of the same household. *See, e.g.*, *Montgomery*, 52 Mich. App. at 461, 217 N.W.2d at 451 (affirming trial court's finding that claimant, a full-time college student supported by his parents, was a member of his parent's household because he lived with his parents when he was not at school or in military service and his parents helped support him financially). When the persons do not reside under the same roof, however, a finding that they are members of the same household usually depends on the existence of an intimate, informal, or dependent association. *Secura*, No. 308425, 2013 Mich. App. LEXIS 482, at *11-16 (discussing published Michigan caselaw). In this regard, *Workman*, 404 Mich. 477, 274 N.W.2d 373, and *Fowler*, 254 Mich. App. 362, 656 N.W.2d 856, are instructive as they both involved persons who resided in structures that were separate from the insured's residence.

In *Workman*, the Michigan Supreme Court determined that Deborah Workman was domiciled in the same household as her father-in-law and thus covered by his insurance policy. 404 Mich. at 497, 274 N.W.2d at 380. At the time of the accident, Workman was temporarily staying at her mother's house with her sister while their mother was on vacation. *Id.* Prior to the accident, however, Workman and her family were living in a trailer located on her father-in-law's property. *Id.* The court first

21

determined that her temporary absence from the property was not determinative because Workman intended to return to the trailer with her family prior to the accident. *Id.*

In examining the facts and circumstances of the case, the court found it important that her home – the trailer – was owned by the father-in-law and was approximately forty to fifty feet from his house. *Id.* at 498, 274 N.W.2d at 380. In concluding that Workman was a member of her father-in-law's household, the Court also noted that Workman's nuclear family had an informal and close relationship with the father-in-law's family, evidenced by the fact that the two families frequently ate meals together and that she and her daughter were in-and-out of the main house on most days. *Id.* at 497, 274 N.W.2d at 380. Furthermore, Workman used the telephone, washer, and dryer located in the main house. *Id.* at 498, 274 N.W.2d at 380. This evidence, according to the Court, demonstrated that Workman's family and her father-in-law's family functioned as an integrated unit despite living in separate structures.

*Fowler*, 254 Mich. App. 362, 656 N.W.2d 856, underscores the importance of the functioning as an integrated unit when it comes to determining membership in a household. In *Fowler*, a thirty-year-old resided in a carriage house with his girlfriend on his parents' property. *Id.* at 365, 656 N.W.2d at 858. Fowler had lived in the carriage house for over three years and had no plans to move out. *Id.* Although the two structures had a common address, the carriage house had a separate entrance and different locks. *Id.* The carriage house had a kitchen, a bathroom, a living area, and several bedrooms. *Id.* Furthermore, the carriage house had its own water, electric, gas, and telephone services and either Fowler or his girlfriend paid the bills. *Id.* Fowler paid rent to his

22

parents, who retained keys to the carriage house, and helped maintain the property by taking care of the lawn and snow removal. *Id.* Fowler kept some personal belongings in his parents' house, ate with them often, and had full access to the main house. *Id.* Although Fowler was clearly domiciled in his parents' carriage house, the Michigan Court of Appeals held that he was not a member of his parents' household for insurance coverage purposes. *Id.* at 365-66, 656 N.W.2d at 858. Despite some evidence suggesting membership in the parents' household, the Court concluded that on balance, the evidence established that Fowler had established his own independent household. *Id.*

The above discussion illustrates that the facts and circumstances of each case matter. Applying the *Workman* and *Dairyland* factors, the Court finds that Hatch was not a resident of Shabazz' household because the Wick Road Property was not Shabazz' household at the time of the accident giving rise to the underlying litigation.

The first *Workman* factor involves the intent of the person seeking to establish her domicile or household in a particular location.[12] *Workman*, 404 Mich. at 496, 274 N.W.2d at 379. Although Shabazz went to Georgia and established residency there for the purpose of furthering her education, there is no evidence that Shabazz ever enrolled at

---

[12] In opposing Allstate's Motion for Summary Judgment, Defendants cite authority standing for the proposition that summary judgment is improper where intent is at issue. (Defs.' Resp. 6 (citing *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002).) Indeed, Defendants suggest that discovery is necessary to flesh out the issue of Shabazz' intent. (*Id.* at 7.) At the motion hearing, counsel suggested that a deposition of Shabazz would clear up any questions pertaining to her intended residence. The Court, however, is not persuaded. Defendants submitted an affidavit of Shabazz in opposing Allstate's summary judgment motion and omitted any mention of Shabazz' intent from that document. (Shabazz Aff., Defs.' Resp. Ex. C.) The Court finds the absence of any such evidence rather telling.

23

the Medical College of Georgia or that she has not already completed her education there. Shabazz relocated to Georgia in August of 2007, nearly six years ago. While Shabazz' affidavit indicates that she has moved several times and has thus not established a permanent household in Georgia, conspicuously absent from the affidavit is any expression of an intent to return to the Wick Road Property.

The second *Workman* factor seeks to identify the level of relationship formality between the insured and the relative. *Id.*, 404 Mich. at 497, 274 N.W.2d at 380. Defendants have not addressed this directly but do point to the fact that Ms. Shabazz retains a key to the Wick Road Property and that some of her personal belongings remain there. Standing alone, these facts support Defendants' argument that the Wick Road Property is Shabazz' household. In the face of the other evidence that Shabazz has established an independent household in Georgia, these facts are simply insufficient. *Cf. Fowler*, 254 Mich. App. 366, 656 N.W.2d at 858 (finding that insured's retention of a key to the carriage house and the son's storage of item's in the main house were insufficient to establish that the persons at issue were members of the same household in light of other evidence).

The third and fourth *Workman* factors are related in that courts are to consider whether the person alleging residence in the household lives in the same house or has another lodging either within the main structure's curtilage or on the same premises. *Workman*, 404 Mich. at 497, 274 N.W.2d at 380. Shabazz – the person alleging residence in the household – does not regularly stay at the Wick Road Property and has lived in far-away Georgia for nearly six years.

24

Defendants point to other evidence in support of their argument.  They contend that the following facts create a genuine issue of material fact as to whether the Wick Road Property is Shabazz' household: (1) Shabazz continues to receive mail at the Wick Road Property; (2) the property is titled in Ms. Shabazz' name; (3) the insurance policy is in Shabazz' name; and (4) Shabazz' name appears on both the utility bills and the property tax bill.  In light of the other evidence that Shabazz and Hatch have independently functioning households, these facts are simply not enough to create a genuine issue of material fact.  Shabazz has lived in Georgia since August of 2007 and has been a Georgia resident for just as long.  Shabazz possesses a Georgia driver's license and her vehicle is registered there.

## IV.   CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that jurisdiction over Allstate's declaratory judgment action is proper pursuant to 28 U.S.C. § 1332 and for that reason Defendants' Motion to Dismiss for Lack of Federal Subject Matter Jurisdiction is **DENIED**, (ECF No. 9).  Furthermore, because the Court believes that no jury could reasonably find for Defendants and that summary judgment is therefore appropriate as a matter of law, Allstate's Motion for Summary Judgment, (ECF No. 12), is **GRANTED**. The Court will issue a separate Declaratory Judgment indicating that Allstate has no duty to defend or indemnify Defendant Hatch in the underlying litigation.

**IT IS SO ORDERED**.

25

Date: June 11, 2013

<u>s/PATRICK J. DUGGAN</u>
UNITED STATES DISTRICT JUDGE


Copies to:
**Cary R. Berlin, Esq.**
**Paula A. Aylward, Esq.**
**Michael J. Rothstein, Esq.**

26